**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRIAN M. CUNNINGHAM, SR., | : | CIVIL ACTION NO. 3:12-CV-0934 |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOHN DOE, *et al.*, | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

I.    **BACKGROUND.**

On May 18, 2012, Plaintiff Brian M. Cunningham, Sr., currently an inmate at SCI-Huntingdon, filed, *pro se*, this instant civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff attached a Motion for Appointment of Counsel to his Complaint. (*Id.*, pp. 4-5). Plaintiff also filed Motion for Leave to Proceed *in forma pauperis*. (Doc. 2).

In his original form Complaint, Plaintiff averred that, on November 25, 2010, while he was playing basketball in the prison gym at the Dauphin County Prison ("DCP"), he slipped and fell in a puddle of water on the gym floor that was allegedly the result from a leaking roof and poor ventilation system. (Doc. 1, p. 2). He alleged that the slip and fall resulted in injuries to his left hip down through his left leg into his left foot. (*Id.*). Based on these facts, Plaintiff averred an Eighth Amendment denial of medical care claim and seemingly a negligence claim against the eight (8) Defendants employed by DCP. (Doc. 1).

On May 25, 2012, we issued an Order denying Plaintiff's Motion for Appointment of Counsel. (Doc. 7). Subsequently, on May 29, 2012, we issued an Order directing Plaintiff to

file an Amended Complaint within fifteen (15) days of the Order date for the following reasons: (1) failure to comply with Rule 8(a) due to his failure to identify the particular conduct of the named Defendants that was alleged to have harmed the Plaintiff; (2) failure to properly allege a constitutional claim under 42 U.S.C. § 1983 due to failure to allege personal involvement of any of the Defendants; and (3) failure to state his Eighth Amendment denial of medical care claim because he did not allege any of the Defendants acted with deliberate indifference to his serious medical need.  (Doc. 8).

On June 12, 2012, Plaintiff filed a 13-page handwritten Amended Complaint alleging violations of the Fifth, Eighth, Ninth and Fourteenth Amendments, intentional infliction of emotional distress, and negligence.  (Doc. 12).  The Court has jurisdiction over Plaintiff's §1983 civil rights action pursuant to 28 U.S.C. §1331 and §1343(a).

In his original Complaint, Plaintiff indicated that he filed grievance at DCP and that the grievance process was completed.  However, Plaintiff also indicated that there was not a grievance procedure available at DCP.  (Doc. 1, p. 1, ¶ II).[1]   In his Amended Complaint, Plaintiff states that he filed a grievance at DCP on July 24, 2011, and that it was sent to

---

[1]We take judicial notice that there was a  grievance procedure available at DCP during the relevant times of the present case.  *See  Magnus v. DCP*, 2010 WL 521114 (M.D. Pa. Feb. 9, 2010); *McAllister v. DCP*, 2010 WL 569833 (M.D. Pa. Feb. 12, 2010).   Under the administrative remedy procedure that was available to Plaintiff Cunningham during the relevant times of his case:  he had to first submit a grievance to the DCP Warden; he then could appeal the decision of the Warden to the Chairman of the DCP Board of Inspectors; he then could appeal to the full DCP Board of Inspectors; and finally, he could appeal to the Dauphin County Solicitor.  *Id.* In his Amended Complaint, Plaintiff Cunningham admits that he only submitted a grievance to the DCP Warden.   (Doc. 12, p. 7, ¶ 32).

Defendant Warden John Doe, and that it " followed to procedure even thoe (sic) at the time there wasn't one available at Dauphin County Prison to try and solve the problem." (Doc. 12, p. 7, ¶'s 29 & 32). Plaintiff also states that Defendant Warden "did nothing to help solve the problem." (*Id.*). Therefore, it appears that Plaintiff has not  exhausted all of his available administrative remedies with DCP.[2]

   We will now screen Plaintiff's Amended Complaint as we are obliged to do in accordance with the PLRA.[3]  *See Abdul-Akbar v. McKelvie*, 239 F. 3d 307, 314 (3d Cir. 2001); *Banks v. County of Allegheny*, 568 F.Supp.2d 579, 589 (W.D. Pa. 2008).

---

[2]Thus, Plaintiff indicates in both of his Complaints that he filed a grievance at DCP regarding his  instant claims and that there was not an administrative remedy procedure available at DCP. Plaintiff must exhaust all of his DCP available administrative remedies with respect to each of his claims prior to filing a civil rights suit.  *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006).  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including civil rights  actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id.*   However, Defendants have the burden to plead exhaustion as an affirmative defense.  *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

[3]The undersigned has been assigned this case for all pre-trial matters.

II.     **STANDARDS OF REVIEW.**

1.      *PLRA*

As stated, the Plaintiff has filed an application to proceed *in forma pauperis* pursuant to

28 U.S.C. § 1915.  (Doc. 2).  The Prison Litigation Reform Act of 1995,[4] (the "PLRA"), obligates

the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis*

pursuant to 28 U.S.C. § 1915.  Specifically, Section 1915(e)(2), which was created by

§ 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any
> portion thereof, that may have been paid, the
> court shall dismiss the case at any time if the
> court determines that (A) the allegation of
> poverty is untrue; or (B) the action or appeal
> (i) is frivolous or malicious; (ii) fails to
> state a claim on which relief may be granted;
> or (iii) seeks monetary relief against a
> defendant who is immune from such relief.

2.      *42 U.S.C. § 1983*

In a § 1983 civil rights action, the Plaintiff must prove the following two essential

elements:  (1) that the conduct complained of was committed by a person acting under color

of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges

or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451

U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993).  Further, Section 1983

is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by

state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).  *See also Holocheck v.*

---

[4]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

*Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Slater v. Susquehanna County*, 613 F. Supp. 2d 653, 660 (M.D. Pa. 2009) (citations omitted); *Stankowski v. Farley*, 487 F. Supp. 2d 543, 550 (M.D. Pa. 2007) ("only those who act under color of state law are liable to suit under section 1983.").   "In order to satisfy the second prong [of a §1983 civil rights action], a Defendant does not have to be a state official, but can also be held liable as a state actor." *Slater v. Susquehanna County*, 613 F. Supp. 2d at 660(citations omitted).

It is well-established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.   It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.   *Id*.   Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.   *Id*.   As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.   Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons.   *Id*.   Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d

at 1208.

The Court uses the same standard to screen a complaint under the PLRA as it does for

a 12(b)(6) motion to dismiss.  *See Banks v. County of Allegheny*, 568 F.Supp.2d at 588;

*O'Connell v. Sobina*, 2008 WL 144199 (W.D. Pa.).

3.    *MOTION TO DISMISS*

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court

stated:

> The Third Circuit Court of Appeals recently set out the appropriate
> standard applicable to a motion to dismiss in light of the United States
> Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433
> (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009).  "[T]o
> survive a motion to dismiss, a complaint must contain sufficient factual
> matter, accepted as true to 'state a claim that relief is plausible on its
> face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The
> Court emphasized that "only a complaint that states a plausible claim for
> relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued,
> "[d]etermining whether a complaint states a plausible claim for relief will
> ... be a context-specific task that requires the reviewing court to draw on
> its judicial experience and common sense." *Id.* (citation omitted).
> *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit
> Court discussed the effects of *Twombly* and *Iqbal* in detail and provided
> a road map for district courts presented with a motion to dismiss for
> failure to state a claim in a case filed just a week before *McTernan, Fowler
> v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).
>
> [D]istrict courts should conduct a two-part analysis. First, the factual and
> legal elements of a claim should be separated. The District Court must
> accept all of the complaint's well-pleaded facts as true, but may disregard
> any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court
> must then determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at
> 1950. In other words, a complaint must do more than allege a plaintiff's
> entitlement to relief. A complaint has to "show" such an entitlement with
> its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d

Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

## III.   ALLEGATIONS OF AMENDED COMPLAINT (DOC. 12).

In his Amended Complaint, Plaintiff alleges that on November 25, 2010, he slipped and fell on a puddle on the DCP's gym floor during recreation time while he was playing basketball, and that as a result of this fall, he suffered injuries, an undetermined amount of medical bills, loss of enjoyment of life, ongoing pain and suffering , and arthritis. (Doc. 12, p. 5, pp. 10-11). Plaintiff avers that Defendant knew the DCP  gym roof was leaking for years and that it was not fixed.   Plaintiff alleges that Defendants exposed him to a known dangerous condition in the gym, *i.e.* the leaking gym roof, and were deliberately indifferent to his well-being and safety since they knew about the roof for more than one year and still failed to fix it.   Plaintiff names the following Defendants in his Amended Complaint:    Warden John Doe; Lieutenant John Doe; Officer Mike; Officer Bareck; Officer Hoss; Dr. John Doe; Nurse Jane Doe; and DCP Medical Department.  (Doc. 12, pp. 1-3).

Plaintiff states that he was seen by the medical Defendants on three separate occasions, including November 25, 2010 (the incident date), December 17, 2010, and January 23, 2011. (*Id*.).   Regarding these visits, Plaintiff avers that his requests to visit an outside hospital were denied, and that, eventually, he was also denied pain medication, despite the fact that he repeatedly informed Defendants of his ongoing pain.  (Doc. 12, pp. 4-6).  He also describes how on January 28, 2011, an x-ray was ordered, and that Defendant Dr. John Doe interpreted the x-ray, stating the doctor told him that he has arthritis resulting from the slip and fall.  (Doc. 12, p. 6).  On July 24, 2011, Plaintiff avers that he filed a grievance and "grieved these issues and nothing happen[ed]." (Doc. 12,  p. 7, ¶ 29).  As stated, Plaintiff contends that even though DCP did not have an administrative remedy procedure available at the time, he submitted a grievance to Defendant Warden, and the Warden did nothing to help solve his problem. (Doc. 12, p. 7, ¶ 32).

Based on the above facts, Plaintiff alleges that his Fifth, Eighth, Ninth and Fourteenth Amendment rights were violated by Defendants.   He first claims that Defendants violated his Eighth Amendment rights to safe confinement conditions because the Defendants allegedly knew of the leaking gym  roof and poor ventilation system, which allegedly caused the puddle on the gym floor on which Plaintiff slipped and fell, and yet did nothing to rectify the condition. (Doc. 12, p. 8).  He also alleges that Defendants violated his Eighth Amendment right to proper medical care for the injuries he sustained when he fell, and he claims that  the care he received was inadequate because the medical Defendants allegedly did not permit him to be examined by an outside medical facility, stopped giving him pain medication, and did not order an x-ray

until two (2) months after the incident.  (Doc. 12, pp. 5-7, 9-10).  He also avers that because Defendants did not implement policies, or alternately adopted policies, which led to his alleged denial of medical care, they violated his Eighth Amendment right to medical care.  (Doc. 12, pp. 9-10).

With regards to his Fifth, Ninth and Fourteenth Amendment claims, Plaintiff ties these claims into his Eighth Amendment claims, but does not allege separate facts or elements relating to these claims.  (Doc. 12, pp. 8-9).  Plaintiff also asserts a Pennsylvania state law claim for Intentional Infliction of Emotional Distress and a "state tort claim" for Defendants' alleged failure to provide adequate medical care and/or safe confinement conditions.  (Doc. 12, pp. 11-12).

In his Prayer for Relief, Plaintiff requests the following: (1) a declaration that Defendants' actions violated Plaintiff's constitutional rights; (2) issuance of a Preliminary and Permanent Injunction to have Defendants Warden John Doe and Lieutenant John Doe fix the leaky roof and ventilation system and for the medical Defendants to provide him with adequate medical treatment; (3) Compensatory damages in the amount of two and a half million dollars ($2,500,000.00) against each Defendant, officially and individually; (4) Punitive damages in the amount of one hundred thousand dollars ($100,000.00); (5) a jury trial; (6) costs of the suit; (7) medical care and/or insurance for the rest of his life; and (8) any appropriate additional relief the court deems appropriate.  (Doc. 12, pp. 12-13).

Therefore, Plaintiff seeks compensatory and punitive damages, a declaratory judgment as well as injunctive relief.  Plaintiff states that he sues the state actors Defendants in both their individual and official capacities.  (*Id.*, p. 3, ¶ 13).  However, Plaintiff can only seek monetary

damages from the state actor Defendants in their individual capacities.[5]

## IV.   DISCUSSION.

We will first address Plaintiff's requests for relief, followed by the exhaustion issue, and then address each of Plaintiff's claims in turn.

### 1.  Official Capacity Claims for Damages

As noted, Plaintiff cannot seek monetary damages from the named DCP Defendants in both their individual and official capacities.  To the extent that Plaintiff seeks compensatory damages from Defendants, he can only sue the state actor Defendants in their individual or personal capacities.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Mitchell v. Luckenbill*, 680 F.Supp. 2d 672, 681 (M.D. Pa. 2010);  *Gale v. Stori*, 608 F.Supp. 2d 629, 636 (E.D. Pa. 2009).

Plaintiff also cannot seek punitive damages as against Defendants in their official capacities.  Plaintiff can only seek punitive damages as against Defendants in their individual or personal capacities.  *See Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625 (1983).  Thus, Plaintiff's claims for punitive damages against Defendants in their official capacities should be dismissed with prejudice.

_____

[5]As stated, Plaintiff indicates that he seeks money damages from the DCP Defendants and he states that  he sues Defendants in both their individual and official capacities.  To the extent that Plaintiff seeks monetary damages from Defendants, he can only sue the state actor Defendants in their  individual or personal capacities.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential).  Thus, we will recommend that Plaintiff's claims for monetary damages against Defendants in their official capacities be dismissed with prejudice.

Based upon well-settled case law, we find that the Court should not allow Plaintiff to amend his Complaint with respect to his damages claims against Defendants in their official capacities since we find it would be futile. *See Van Tassel v. Lawrence County Domestic Relations Section,* 659 F.Supp.2d 672, 696 (W.D. Pa. 2009)*; Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002)(The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless it would be futile.); *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004).

Further, Plaintiff's requests for specific amounts of monetary damages (Doc. 12, p. 12), should be stricken.  Since Plaintiff seeks unliquidated damages, he cannot claim specific sums of relief.  Pursuant to Local Rule 8.1, M.D. Pa., Plaintiff's request for specific monetary damages should be stricken from his Amended Complaint.

   *2.  Request for Injunctive Relief*

As his request for injunctive relief, Plaintiff states that he seeks this Court to order Defendants Warden John Doe and Lieutenant John Doe fix the leaky roof and ventilation system in the DCP gym  and,  for the medical Defendants, Dr. John doe, Nurse Jane Doe and DCP Medical Department,  to provide adequate medical treatment for inmates confined in DCP.  (Doc. 12, p. 12).   Plaintiff was not confined at DCP when he signed his original Complaint on May 10,  2012.  Rather, he is now confined at  SCI-Pittsburgh where he is serving his state prison sentence.  We find that Plaintiff's stated requests for injunctive relief against

Defendants, prison staff at DCP,  to be moot since Plaintiff is no longer confined at DCP and

he does not claim that there is a reasonable likelihood he will be  returned to DCP in the future

and again subjected to same conduct.  *See Toney v. Bledsoe*, 427 Fed.appx. 74 (3d Cir. 2011);

*Kerce v. Lappin,* 2011 WL 864470, *3 (M.D. Pa. 3-9-11)("As a general rule, an inmate's transfer

to another prison, or his outright release from incarceration, moots a request for a declaratory

judgment or injunctive relief.")(citing *Sutton v. Rasheed,* 323 F.3d 235, 248 (3d Cir. 2003).

    *3.  Request for Declaratory Judgment*

    We find that Plaintiff's request for declaratory relief that this Court declare the alleged

conduct of Defendants on November 25, 2010 and thereafter, during his prior confinement at

DCP  violated his constitutional rights should also be dismissed from this §1983 civil rights

action.   Initially, we find that Plaintiff's request for declaratory relief, like his request for

injunctive relief is moot since he is no longer confined at DCP and  he does not claim that there

is a reasonable likelihood he will be  returned to DCP in the future and again subjected to same

conduct.   *See Kerce v. Lappin,* 2011 WL 864470, *3.

    Moreover, in *Blakeney v. Marsico*, 340 Fed.Appx. 778, 780 (3d Cir. 2009), the Court

stated:

> To satisfy the standing and "case or controversy" requirements of Article
> III, a party seeking a declaratory judgment "must allege facts from which
> it appears there is a substantial likelihood that he will suffer injury in the
> future." *Bauer v. Texas,* 341 F.3d 352, 358 (5th Cir.2003) (citing *City of
> Los Angeles v. Lyons,* 461 U.S. 95, 102-03, 103 S.Ct. 1660, 75 L.Ed.2d
> 675 (1983)). Here, Blakeney seeks a declaration merely that defendants'
> "acts" and "policies" violate the United States and Pennsylvania
> Constitutions. He does not allege that he will be subjected to that alleged
> conduct in the future. Moreover, even if defendants violated Blakeney's
> rights in the past as he alleges, he is not entitled to a declaration to that

> effect. *See Brown v. Fauver,* 819 F.2d 395, 399-400 (3d Cir.1987)
> (directing District Court to dismiss prisoner's Section 1983 claim for
> prospective relief where appellant "has done nothing more than allege
> past exposure to unconstitutional state action").

Plaintiff Cunningham has not sought declaratory relief alleging that he will be again subjected to the leaking gym roof and denial of medical care at DCP in the future by Defendants in violation of his constitutional rights.  In fact, as stated, Plaintiff is no longer even confined at DCP, he has not been confined at DCP since he initiated this action. Nor  does Plaintiff  state  that there is a reasonable likelihood he will be  returned to DCP in the future and again subjected to same conduct.  Thus, with respect to Plaintiff's stated request for declaratory relief seeking this Court to declare the alleged conduct of Defendants, in November 2010 during his prior confinement at DCP,  violated his constitutional rights, we find that Plaintiff lacks standing to request a declaratory judgment regarding alleged past exposure to unconstitutional actions by Defendants.  *See Blakeney, supra.*   We also find Plaintiff's request for declaratory relief to be moot.  *See Kerce v. Lappin, supra.*

Therefore, we will recommend that Plaintiff's request for an injunction and his request for declaratory relief (Doc. 12, p. 12) be dismissed from this case with prejudice.  *See Tinsley, supra; Blakeney, supra;  Kerce v. Lappin, supra.*

Based on the above discussion, we find futility of allowing Plaintiff to amend his Complaint with respect to his request for an injunction and his request for declaratory relief.  *See Alston v. Parker*, 363 F.3d at  235-236.

   *4.  Defendant DCP Medical Department*

 Defendant DCP Medical Department is not a person for purposes of a §1983 action.  *See Ruff v. Health Care Adm'r*, 441 Fed.appx. 843, 845-46 (3d Cir. 2011).    As such, we will recommend that

Defendant DCP Medical Department be dismissed with prejudice for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). We find futility in allowing Plaintiff to amend his pleading with respect to DCP Medical Department.

   *4. Exhaustion of Administrative Remedies*

   A prisoner is barred from bringing a civil rights action in federal court "until such administrative remedies as are available have been exhausted." 42 U.S.C. §1997e(a). In screening Plaintiff's Complaint under the PLRA, the Court can *sua sponte* dismiss without prejudice Plaintiff's action regarding his constitutional claims which are not yet exhausted because his Complaint makes clear that he is still in process of fully exhausting his claims. *See Jones v. Lorady*, 2011 WL 2461982 (M.D. Pa. 6-17-11)(citing *McPherson v. U.S.*, 2010 WL 3446879, *3-*4 (3d Cir. 9-2-10)).

   In *McPherson v. U.S.*, 2010 WL 3446879, *3-*4 (3d Cir. 9-2-10), the Third Circuit stated:

> Failure to exhaust and the statute of limitations are similar "in the abstract": they are both affirmative defenses. But, a court may nonetheless dismiss a suit for failing to state a claim when the limitations defense is obvious from the face of the complaint. We see no reason why a district court, when screening a complaint pursuant to the PLRA, may not *sua sponte* dismiss a suit whose allegations make clear that the action is not timely. Indeed, other Courts of Appeals have recognized that dismissal under these circumstances is appropriate. *See, e.g., Fogle v. Pierson,* 435 F.3d 1252, 1258 (10th Cir.2006); *Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir.2001); *Nasim v. Warden, Maryland House of Corr.,* 64 F.3d 951, 956 (4th Cir.1995) (en banc); *Pino v. Ryan,* 49 F.3d 51, 53-54 (2d Cir.1995).FN4 We agree that when a statute-of-limitations defense is apparent from the face of the complaint, a court may sua sponte dismiss the complaint pursuant to 28 U.S.C. § 1915 or 28 U.S.C. § 1915A.

*See Robinson v. Varano,* Civil No. 10-2131, M.D. Pa.; *Jones, supra*.

   As the Courts have repeatedly held, it is well-settled that the Plaintiff inmate must exhaust his administrative remedies prior to filing a civil rights suit. *See Mitchell, supra*; *Ahmed v. Dragovich*, 297

14

F.3d 201, 209 & n. 9 (3d Cir. 2002).  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme

Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding

prison conditions, including § 1983 actions or actions brought pursuant to any other federal law,

including this *Bivens* action.  The *Porter* Court held that "the PLRA's exhaustion requirement applies

to all inmate suits about prison life, whether they involve general circumstances or particular

episodes, and whether they allege excessive force or some other wrong." *Id.; Woodford v. Ngo,* 126

S Ct. 2378 (2006); *Fortune v. Bitner*, 2006 WL 2769158, *7 (M.D.Pa.)("The PLRA mandates that

inmates 'properly' exhaust administrative remedies before filing suit in federal court.")(citation

omitted).  Further, the Defendants have   the burden to plead exhaustion as an affirmative defense.

*See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *Fortune v. Bitner*, 2006 WL 2769158, *7.

"A prisoner must exhaust all available administrative remedies before initiating a federal

lawsuit." *Lombardi v. Pugh*, 2009 WL 1649908, *3(M.D. Pa. 6-9-09)(citation omitted).  Further, "the

exhaustion requirement is not satisfied if the inmate files an action in the district court prior to

completing the administrative remedy process." *Id*.(citation omitted); *See also Mitchell v. Dodrill*, 696

F.Supp.2d 454, 463-64 (M.D. Pa. 2010)(Court stated that "most circuit courts are in agreement that

a prisoner may not satisfy the PLRA's exhaustion requirement by exhausting administrative remedies

*after* initiating suit in federal court.")(emphasis original)(citations omitted).

The Court in *Mitchell v. Dodrill*, 696 F.Supp.2d at 465, stated:

> The United States Court of Appeals for the Third Circuit has not issued a
> precedential opinion on the issue. However, in a non-precedential opinion,
> the Court found that the lower court had properly dismissed the plaintiff's
> complaint because his exhaustion attempt took place after he filed his *Bivens*
> claim. *Oriakhi v. United States,* 165 Fed.Appx. 991, 993 (3d Cir.2006) (not
> precedential). "[T]he district court must look to the time of filing, not the

time the district court is rendering its decision, to determine if exhaustion has occurred." *Id.* (quoting *Johnson,* 340 F.3d at 627–28). The Court further stated that "[t]he fact that [the plaintiff] completed the administrative review process before the District Court reached the exhaustion question is of no consequence. Indeed, there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court." *Oriakhi,* 165 Fed.Appx. at 993 (citing *Johnson,* 340 F.3d at 627–28). (not precedential).

The Third Circuit has repeatedly stated that the PLRA "requires that inmate-Plaintiffs exhaust all administrative remedies prior to filing suit in federal court." *Banks v. Roberts*, 2007 WL 3096585, *1 (3d Cir. 10-19-07)(Non-Precedential) (citation omitted); *Ahmed v. Dragovich*, 297 F.3d at 209 & n. 9 . The *Banks* Court also noted that a futility exception to the PLRA's mandatory exhaustion requirement is completely precluded. *Banks v. Roberts*, 2007 WL 3096585, *1; *Spruill v. Gillis,* 372 F. 3d 218, 228-230 (3d Cir. 2004); *see also Nyuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000).

As noted, we take judicial notice that the DCP had an administrative remedy policy available to the inmates confined  during the relevant times of this case.  *See  Magnus v. DCP*, 2010 WL 521114 (M.D. Pa. Feb. 9, 2010); *McAllister v. DCP*, 2010 WL 569833 (M.D. Pa. Feb. 12, 2010).  Under the administrative remedy procedure that was available to Plaintiff Cunningham during the relevant times of his case:  he had to first submit a grievance to the DCP Warden; he then could appeal the decision of the Warden to the Chairman of the DCP Board of Inspectors; he then could appeal to the full DCP Board of Inspectors; and finally, he could appeal to the Dauphin County Solicitor.  *Id.* In his Amended Complaint, Plaintiff Cunningham admits that he only submitted a grievance to the DCP Warden.   (Doc. 12, p. 7, ¶ 32).  As stated, Plaintiff Cunningham admits on the face of his instant Amended Complaint that he has not yet fully exhausted his DCP

administrative remedies with respect to his claims.

In *Cooper v. Sniezek*, 2010 WL 3528848, *7 (M.D. Pa. 9-7-10), the Court stated:

> A prisoner must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process. *See Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner,* 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). "[I]t is beyond the power ... of any ... [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno,* 204 F.3d 65, 73 (3d Cir.2000) (quoting *Beeson v. Fishkill Corr. Facility,* 28 F.Supp.2d 884, 894-95 (S.D.N.Y.1998) (citing *Weinberger v. Salfi,* 422 U.S. 749, 766, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis,* 204 F.3d at 71. The PLRA also mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo,* 548 U.S. 81, 92, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."*Id.* at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 93 (quoting *Nussle,* 534 U.S. at 525). Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis,* 372 F.3d 218, 227-32 (3d Cir.2004).

Thus, we find that Plaintiff's two Complaints clearly show Plaintiff has not exhausted all of his available DCP administrative remedies before filing this action. (Docs. 1 & 12). Therefore, we will recommend that the Plaintiff's Amended Complaint be dismissed without prejudice pending completion of fully exhausting the DCP administrative remedy process with respect to all of his constitutional claims.

5. *Fifth Amendment Claim*

Plaintiff alleges that his Fifth Amendment rights were violated for the following reasons: (1) Defendants knew of but failed to remedy the leaking roof and poor ventilation system which led to the alleged slip and fall in violation of the Fifth Amendment; (2) Defendants knew of but acted with deliberate indifference to Plaintiff's medical needs resulting from the alleged slip and fall in violation of the Fifth Amendment; (3) Defendants have implemented and/or failed to adopt policies, practices and procedures which Defendants "knew or reasonably should have known, would be ineffective in delivering medical treatment" thereby endangering the Plaintiff in violation of the Fifth Amendment; and (4) Defendants failed to instruct, supervise or train their employees and agents as to assure "the delivery of adequate medical care to Plaintiff and/ or confinement conditions consistent with his medical condition" thereby endangering the Plaintiff's health and safety in violation of the Fifth Amendment.  (Doc. 12, pp. 8-10).

The Fifth Amendment states that no person shall be "deprived of life, liberty, or property without due process of law."  However, according to the Third Circuit, the Fifth Amendment applies only to federal officials, not state officials.  *Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983);  *Leventry v. Watts*, 2007 U.S. Dist. LEXIS 36256 (W.D. Pa. 2007).  Because Plaintiff's Fifth Amendment claim is being raised against only state officials, we respectfully recommend that this claim be dismissed with prejudice, as leave to amend would be futile.

6. *Eighth Amendment Conditions of Confinement Claim*

In his Amended Complaint, under a heading titled "Count I - Civil Rights Violations", Plaintiff alleges  five (5) of the Defendants, namely, Defendants Warden John Doe, Lieutenant

John Doe, Officer Mike, Officer Bareck and Officer Hoss, violated his Eighth Amendment conditions of confinement right due to the following reasons: (1) they had knowledge but failed to fix the leaking roof and poor ventilation system, which allegedly caused the gym floor puddle on which Plaintiff slipped and fell; (2) they failed to establish and implement, or alternately have adopted, policies, practices and procedures to assure that Plaintiff received appropriate care for his medical needs after he fell; and (3) they failed to train, supervise or instruct their employees as to assure adequate care for his medical needs.  (Doc. 12, p. 8-10).

Plaintiff states that these five (5) Defendants "knew that the prison's gym roof and ventilation system had been leaking and had problems with it for more than a year and yet failed to remedy the condition creating an unsafe condition, leading it to be dangerous, thereby endangering the Plaintiff . . . and rendering him to substantial risk of serious harm." (Doc. 12, p. 8).

*Pro se* parties are accorded substantial deference and liberality in federal court. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  They are not, however, free to ignore the Federal Rules of Civil Procedure.  Federal Rule of Civil Procedure 8(a) requires that a complaint contain a short and plain statement setting forth: (1) the grounds upon which the court's jurisdiction rests; (2) the claim showing that the pleader is entitled to relief; and (3) a demand for judgment for the relief sought by the pleader.

Although there is not a heightened pleading standard in civil rights cases,[6] a civil rights complaint, in order to comply with Rule 8, must contain at least a modicum of factual specificity, identifying the particular conduct of the defendant that is alleged to have harmed the plaintiff, so that the court can determine that the complaint is not frivolous ,and so that a defendant has adequate notice to frame an answer.  *Frazier v. Southeastern Pennsylvania Transp. Auth.*, 785 F.2d 65, 68 (3d Cir. 1986).  A civil rights complaint complies with this standard if it alleges the conduct violating the plaintiff's rights, the time and the place of that conduct, and the identity of the responsible officials.  Also, a civil rights pleading must include factual allegations to support the constitutional claims raised in the complaint.  *See Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949, 1953 (2009).

Under even the most liberal construction, Plaintiff's Amended Complaint is not in conformity with Rule 8(a).  It does not give Defendants fair notice of what Plaintiff's claims against them are and the grounds upon which the claims rest.  Plaintiff merely states that the five (5) Defendants knew that the gym had a leaky roof and poor ventilation system.  However, he did not include sufficient facts to properly state Eighth Amendment claims against these five Defendants.

Furthermore, Plaintiff has failed to properly raise Eighth Amendment claims against the five stated Defendants.   The Supreme Court in *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009), repeated

---

[6]In *Leatherman v. Tarrant County Narcotics Unit*, 507 U.S. 163 (1993), the United States Supreme Court held that it was improper to apply heightened pleading standards to § 1983 actions.  The Court noted that a § 1983 complaint need only comply "with the liberal system of 'notice pleading' set up by the Federal Rules." *Id.* at 167.

the personal involvement necessary in a § 1983 action.  In *Innis v. Wilson*, 2009 WL 1608502,

*2 (3d Cir. 2009), the Court stated:

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* No. 07-1015, slip op. at 14 (May 18, 2009) [129 S. Ct. 1937 (2009)] (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

> "Innis's allegation against Wilson also fail because Innis is attempting to establish liability based on supervisory liability. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988) (liability cannot be predicated solely on the operation of *respondeat superior*, as a defendant must have personal involvement in a civil rights action). Innis does not allege that Wilson had personal knowledge of his injury and subsequently acted with deliberate indifference. *Spruill,* 372 F .3d at 236. Accordingly, these claims were properly dismissed."

In *Saltzman v. Independence Blue Cross*, 2009 WL 1606887, *4 (E.D.Pa.), the Court

stated:

> The Court in *Iqbal* explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. *Id.* at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly,* 550 U.S. at 555); *see also Phillips v. County of Allegheny,* 515 F.3d 224, 232 (3d Cir.2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing *Twombly,* 550 U.S. at 556 n. 3)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556).

*See Sims v. Piazza*, 2009 WL 3147800, *5 (M.D. Pa.)("Legal conclusions without factual support

are not entitled to the assumption of truth.")(citation omitted).

In light of the required personal involvement in a § 1983 action, as discussed, it is evident that Plaintiff's Amended Complaint fails to sufficiently allege the five (5) Defendants' personal involvement in Plaintiff's Eighth Amendment conditions of confinement claim.  As stated above, Plaintiff has failed to support his allegations regarding this claim against these Defendants with any specific factual information, but rather merely states that the Defendants knew of the leaking roof in the gym and poor ventilation system and, that they knew these alleged conditions could create a substantial risk for inmates.

Furthermore, even if Plaintiff had properly alleged personal involvement of the five (5) Defendants regarding his Eighth Amendment conditions of confinement claim, he has not stated the elements of this claim.  The Supreme Court has held that when an Eighth Amendment claim is brought against a prison official, a Plaintiff must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  An objectively, sufficiently serious deprivation is one that denies the inmate "the minimal measures of life's necessities" such as food, water and shelter.  *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 419 (3d Cir. 2000) citing *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 60 L. Ed. 2d 59 (1981).  Furthermore, the Third Circuit defined deliberate indifference as  "a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety."  *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001); *See also  Bizzell v. Tennis*, 449 Fed. Appx.

112, 115 (3d Cir. 2011).  Additionally, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  *Farmer*, 511 U.S. at 837. Also, "mere negligence or inadvertence will not satisfy the deliberate indifference standard and cannot constitute a violations of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 105-06, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

In *Santiago v. Guarini*, there were facts similar to those presented in Plaintiff's Amended Complaint, namely, the inmate's cell had a water leak, which was reported to several different correction officers.  2004 U.S. Dist. LEXIS 19051 at *6 (E.D. Pa. Sept. 20, 2004).  Subsequently, as a result of the wet cell floor, the inmate slipped and injured his hand and back.  *Id*.  He was immediately taken to the infirmary, where he received an x-ray, was placed in a cast, and was given medication.  *Id*. at *1. The inmate filed a 42 U.S.C. § 1983 action alleging an Eighth Amendment conditions of confinement claim, arguing that the warden knew of the water leak in his cell, but failed to direct a repair of the leak, and Plaintiff was injured as a result.  *Id*. However, because the Plaintiff inmate failed to establish that the warden knew of a substantial risk with regard to the leak, or that the leak proposed an excessive risk to the Plaintiff's health or safety, the Court considered the warden's actions to amount only to negligence, not deliberate indifference/ reckless disregard required to establish an Eighth Amendment confinement conditions claim.  *Id.*

The *Santiago* Court stated:

> Although Plaintiff uses the words "deliberate indifference," he has alleged no facts from which the inference could be drawn that Defendant subjectively knew of and appreciated a substantial risk with regard to that

leak. *See Thomas v. Zinkel*, 155 F. Supp. 2d 408, 414 (E.D. Pa. 2001) (granting defendants' motion to dismiss where pro se plaintiff "used the constitutional code words 'deliberate indifference'" but alleged only that prison officials knew of water leak and should have repaired it); *see also Denz v. Clearfield County*, 712 F. Supp. 65, 66 (W.D. Pa. 1989) (granting defendant's motion to dismiss where prisoner inserted the phrase "deliberate, willful and wanton" but alleged only that defendant failed to repair his inadequately ventilated cell).

Furthermore, the *Santiago* Court stated:

> Slippery prison floors are not objectively serious conditions giving risk to Eighth Amendment protection.  *See LaMaire v. Maass*, 12 F. 3d 1444, 1457 (9th Cir. 1993) ("slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment") (citations and quotation omitted); *Robinson v. Cuyler*, 511 F. Supp. 161, 163 (E.D. Pa. 1981) (holding that a slippery kitchen floor in a prison is not hazardous enough to merit constitutional protection) . . . At most, Plaintiff has successfully alleged that Defendant was negligent, but "negligence does not transform into a constitutional claim solely because it is committed under color of state law."  *Zinkel*, 155 F. Supp. at 414 (*citing Estelle*, 429 U.S. at 105-06).

*Santiago v. Guarini,* 2004 U.S. Dist. LEXIS 19051 at *6-7.

Plaintiff alleges that Defendants Warden John Doe, Lieutenant John Doe, Officer Mike, Officer Bareck and Officer Hoss acted with deliberate indifference to the substantial risk the leaking roof and poor ventilation system created in the gym.  However, Plaintiff has not alleged sufficient facts to support his Eight Amendment claim, and also has failed to allege that these five Defendants knew or were aware of an excessive risk.  Furthermore, Plaintiff did not allege that the confinement conditions were such an objectively, sufficiently serious deprivation that denied him minimal civilized measure of life's necessities.  At most, the alleged conduct of Defendants amounted to negligence.

24

Therefore, based on the above discussion, we will recommend that Plaintiff's Eighth Amendment conditions of confinement claim be dismissed with prejudice, as we find leave to amend again would be futile since Plaintiff has now raised this claim twice, in his original Complaint and in his Amended Complaint.   Thus, Plaintiff has already been afforded one opportunity to amend his Eighth Amendment conditions of confinement claim against Defendants Warden John Doe, Lieutenant John Doe, Officer Mike, Officer Bareck and Officer Hoss and he has failed to do so in a manner required to state a cognizable constitutional claim against them.  Also, as discussed above, we find futility in allowing Plaintiff to amend a second time his Eighth Amendment conditions of confinement claim since he has failed to exhaust all of his DCP administrative remedies.  The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless the Court finds bad faith, undue delay, prejudice, or futility.  *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002);  *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004).

7. *Eighth Amendment Denial of Medical Care Claim*

Plaintiff avers that after his alleged slip and fall on November 25, 2010, Defendant Officers Mike and Hoss helped him up and took him to the DCP medical department, where Defendant Nurse Jane Doe gave him pain medication and released him from care.  (Doc. 12, p. 5).  Plaintiff avers that Defendant Nurse Jane Doe did nothing to find out his injuries and to fix his injures, and that she denied his request to go to an outside hospital.

25

On December 17, 2010, Plaintiff states that he was seen again by Defendants DCP Medical Department and Defendant Nurse Jane Doe, and that Defendant Nurse Jane Doe gave him more medicine for his pain. Plaintiff avers that Defendant Nurse Jane Doe again denied his request to go to an outside hospital for treatment. (Doc. 12, pp. 5-6).

Plaintiff alleges that Defendant DCP Medical Department then repeatedly stopped his pain medication until he wrote to it complaining about his pain, at which time his medication would be renewed by Defendant Dr. John Doe.  (*Id.,* p. 6).

On January 23, 2011, Plaintiff avers that Defendant Dr. John Doe examined him and renewed Plaintiff's medication, and that Defendant Dr. John Doe denied his request to go to an outside hospital.

On January 28, 2011, Plaintiff avers that he received an x-ray.  Plaintiff alleges that Defendant Dr. John Doe interpreted the x-ray and found that Plaintiff suffered an impairment from his fall as well as arthritis in his left hip stemming from his fall in the prison's gym.  (Doc. 12, p. 6).   Plaintiff claims that throughout the period from November 25, 2010 (the date of the incident in question) until January 23, 2011, his repeated requests to visit an outside medical facility were denied by Defendants DCP Medical Department, Nurse Jane Doe and Dr. John Doe.  (Doc. 12, p. 5-6).  Furthermore, Plaintiff states that after he met with Defendant Dr. John Doe on January 28, 2011, to go over the x-ray results, Defendants would not renew his pain medication throughout the remainder of his confinement at DCP.  (Doc. 12, p. 7).   Plaintiff also avers that he now suffers from continual pain in his left hip and lower back from his fall in the DCP gym, and that he has arthritis and trouble walking.

Based on these aforementioned facts stated in his Amended Complaint, Plaintiff alleges an

Eighth Amendment denial of medical care claim against all eight (8) Defendants.  (Doc. 12, p.

8).  He claims that the Defendants had knowledge of and acted with deliberate indifference to

his medical needs and failed to administer necessary and adequate medical care thereby

endangering his health and safety.  (Doc. 12, p. 9).  He also avers that the Defendants have

"failed and neglected to establish and implement policies, practices and procedures designed to

assure that Plaintiff receives  medical treatment and care . . . or have adopted policies, practices

and procedures which Defendants knew, or reasonably should have known, would be

ineffective in delivering medical treatment and care . . . thereby endangering the Plaintiff's

health and safety."  (Doc. 12, p. 9).  Additionally, he claims that the Defendants have failed to

instruct, supervise or train their employees and agents in such a manner as to assure the delivery

of adequate medical care.  (Doc. 12, p. 10).

The Eighth Amendment "requires prison officials to provide basic medical treatment to

those whom it has incarcerated."  *Iseley v. Beard*, 2009 WL 1675731, *7 (M.D. Pa.) *citing Estelle*

*v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  In order to successfully raise an

Eighth Amendment medical care claim, a plaintiff inmate must allege that the defendant was

deliberately indifferent to plaintiff's serious medical needs.  *Williams v. Klem*, 2008 WL

4453100, *7 (M.D. Pa.) *quoting  Monmouth Cty. Corre. Inst. Inmates v. Lanzaro*, 834 F. 2d 326,

346 (3d Cir. 1987).

According to the Court in *Iseley v. Beard*, a prison official acts with deliberate indifference to

an inmate's serious medical needs when "he knows of and disregards an excessive risk to

inmate health or safety."  2009 WL 1675731, *7 (M.D. Pa.) quoting *Farmer v. Brennan*, 511

U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  According to the Supreme Court in

*Estelle*, negligently diagnosing or treating a medical condition does not amount to an Eighth

Amendment violation of an inmate's right to medical care/ treatment.  *Estelle,* 429 U.S. at 106.

Furthermore, according to the *Williams* Court:

> A serious medical need is one that has been diagnosed by a physician as
> requiring treatment, or one that is so obvious that a layperson would
> recognize the need for a doctor's attention. . . [I]f unnecessary and wanton
> infliction of pain results as a consequence of denial or delay in the
> provision of adequate medical care, the medical need is of the serious
> nature contemplated by the Eighth Amendment.

2008 WL 4453100, *7 (M.D. Pa.) (citing *Monmouth Ct. Corr. Inst. Inmates*, 834 F.2d at 347);

*see also Young v. Kazmerski*, 266 Fed. Appx. 191, 193 (3d Cir. 2008).

Applying these principles to the above-detailed allegations Plaintiff asserts against all eight (8)

Defendants, we find that, for a second time, Plaintiff has failed to properly allege an Eighth

Amendment denial of medical care claim.  While Plaintiff used the words "deliberate

indifference" in his Amended Complaint in relation to the treatment he alleges medical

Defendants failed to provide to him, merely using the words "deliberate indifference" in an

Eighth Amendment denial of medical care claim does not in and of itself satisfy the deliberate

indifference standard.

In *Mimms v. U.N.I.C.O.R.*, 2010 WL 2747470, *2 (3d Cir.), the Court dismissed the

defendant's Eighth Amendment medical care claim, stating:

> [Defendant] did not satisfy the standard for deliberate indifference.
> According to Mimms' own allegations, he received immediate medical care,

28

and he did not specify what treatment, if any, he was denied.  Although he claimed that he experienced continuing pain, the District Court properly noted that he did not allege that the pain was severe or that he informed prison officials about the pain and was denied treatment.

In this case, Plaintiff received immediate medical care after his fall and thereafter,  however, he alleges that he repeatedly informed Defendants  DCP Medical Department, Nurse Jane Doe and Dr. John Doe of his on-going pain, that his requests to be examined by an outside hospital were repeatedly denied,  that he was eventually denied pain medication from January 28, 2011 to his transfer from DCP, and that he did not receive an x-ray until two (2) months after the alleged slip and fall.  (Doc. 12, pp. 5-6).  However, Plaintiff once again alleges only that his care was inadequate, and does not seemingly meet the "deliberate indifference of a serious medical need" standard.  As we have mentioned, inadequacy of medical care does not amount to the deliberate indifference needed to properly raise an Eighth Amendment denial of medical care claim.   Also, Plaintiff's disagreement with the care that was provided and his disagreement with the decision of the medical Defendants that he did not require treatment by an outside hospital do not rise to the level of  an Eighth Amendment denial of medical care claim.

Additionally, according to the Court in *Robinson v. U.S.*, 2010 WL 1254277, *14 (M.D. Pa.):

> This [Eighth Amendment ] test "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment ... which remains a question of sound professional judgment." *Little v. Lycoming County,* 912 F.Supp. 809, 815 (M.D.Pa.1996) (citing *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979), quoting *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).  When an inmate is provided with medical care

29

and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. *Nottingham v. Peoria,* 709 F.Supp. 542, 547 (M.D.Pa.1988). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Lanzaro,* 834 F.2d at 346. Only flagrantly egregious acts or omissions can violate the standard. Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider. *White v. Napolean,* 897 F.2d 103, 108-10 (3d Cir.1990).

With respect to non-medical Defendants, namely, Warden John Doe, Lieutenant John Doe, Officer Mike, Officer Bareck and Officer Hoss, we find that Plaintiff 's Eighth Amendment denial of proper medical care claim should be dismissed with prejudice as against them.  We do not find that Plaintiff has stated the personal involvement of Defendants Warden John Doe, Lieutenant John Doe, Officer Mike, Officer Bareck and Officer Hoss with respect to his denial of proper medical care claim regarding his injuries from his fall.  We find that Plaintiff has stated a cognizable Eighth Amendment denial of proper medical care claims regarding his injuries after his November 25, 2010 fall as against only the medical Defendants, namely, Defendants Dr. John Doe and Nurse Jane Doe.  *See  Mimms v. U.N.I.C.O.R.*, 2010 WL 2747470, *2 (3d Cir.). Also, as discussed above, we will recommend that Defendant DCP Medical Department be dismissed from this action with prejudice.

Plaintiff does not allege that Defendants  Warden John Doe, Lieutenant John Doe, Officer Mike, Officer Bareck and Officer Hoss Nish and Dulske were involved with his medical care for his fall injuries, or that they directed the medical Defendants to violate his rights.  Additionally, Plaintiff repeatedly admits that he was under the care of the medical department at DCP with respect to his injuries.

30

We find that Plaintiff has named Defendants Warden John Doe and Lieutenant John Doe only based on *respondeat superior* which is not an acceptable basis to hold these Defendants liable in a civil rights action.  *See Rhines v. Bledose*, 2010 WL 2911628, *2 (3d Cir.).  As discussed above, Plaintiff does not specifically state the personal involvement of any of the non-medical Defendants, *i.e.* Warden John Doe, Lieutenant John Doe, Officer Mike, Officer Bareck and Officer Hoss,  with respect to his denial or proper medical care claim regarding his fall injuries.  As such, Plaintiff 's denial of medical care claim against Defendants Warden John Doe, Lieutenant John Doe, Officer Mike, Officer Bareck and Officer Hoss should be dismissed.   *See George v. PA DOC*, 2010 WL 936778, *4 (M.D. Pa.); *Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d Cir. 12-14-10).

Further, Defendants Warden John Doe, Lieutenant John Doe, Officer Mike, Officer Bareck and Officer Hoss,  non-physicians, cannot be found deliberately indifferent to the Plaintiff's serious medical need for his left hip/leg condition, as the Plaintiff clearly indicates that the prison medical staff at DCP, including Defendants Dr. John Doe and Nurse Jane Doe, were aware of conditions.  *Durmer v. O'Carroll*, 991 F.2d. 64, 69 (3d. Cir. 1993).  *See also Thomas v. Zinkel*, 155 F. Supp. 2d 408, 413 (E.D. Pa. 2001) (Prison officials "who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." (Citing *Durmer*, 991 F. 2d at 69 n. 14)); *Newton v. Reitz*, 2009 WL 233911("the United States Court of Appeals for the Third Circuit held in *Durmer* that a non-physician Defendant cannot be held liable for being deliberately indifferent to an inmate's medical needs where, as here, the inmate is

receiving treatment from the institution's health care staff.")(Citing *Durmer*, 991 F. 2d at 69);

*Meekins v. Law*, 2007 WL 2318118, * 3 (M.D. Pa. 8-8-07).

Therefore, we will recommend that Plaintiff's Eighth Amendment claims for denial of proper medical care against Defendants Warden John Doe, Lieutenant John Doe, Officer Mike, Officer Bareck and Officer Hoss be dismissed with prejudice.  Based upon the above, we find that it would be futile to allow Plaintiff to once again amend his Complaint against Defendants Warden John Doe, Lieutenant John Doe, Officer Mike, Officer Bareck and Officer Hoss with respect to his Eighth Amendment claims for denial of proper medical care regrading his fall injuries.  *See Alston, supra.*

Thus, we will recommend that Defendants Warden John Doe, Lieutenant John Doe, Officer Mike, Officer Bareck and Officer Hoss be dismissed entirely since we find that Plaintiff has failed to state any cognizable constitutional claim against them.

As stated, we find that Plaintiff has properly alleged that Defendants Dr. John Doe and Nurse Jane Doe acted with deliberate indifference to his medical condition, even though his original Complaint and Amended Complaint seem to be aimed at the adequacy of the medical care he received and disagreement with the care provided, rather than allege deliberate indifference to his medical condition.  However, Plaintiff alleges Defendants Dr. John Doe and Nurse Jane Doe stopped giving him pain medication and did not order an x-ray for two (2) months after the slip and fall despite the fact that Plaintiff repeatedly informed these Defendants that he was suffering from ongoing pain.  Thus , we will recommend that Plaintiff's Eighth Amendment denial of medical care claim be allowed to proceed as against Defendants Dr. John

Doe and Nurse Jane Doe after Plaintiff exhaust his DCP administrative remedies.

8. *Ninth Amendment Claim*

Plaintiff claims that his Ninth Amendment rights were violated for the following reasons: (1) Defendants allegedly knew of but failed to remedy the leaking roof and poor ventilation system which led to the alleged slip and fall in violation of the Ninth  Amendment; (2) Defendants knew of but acted with deliberate indifference to Plaintiff's medical needs resulting from the alleged slip and fall in violation of the Ninth Amendment; (3) Defendants have implemented and/or failed to adopt policies, practices and procedures which Defendants "knew or reasonably should have known, would be ineffective in delivering medical treatment" thereby endangering the Plaintiff in violation of the Ninth Amendment; and (4) Defendants failed to instruct, supervise or train their employees and agents as to assure "the delivery of adequate medical care to Plaintiff and/ or confinement conditions consistent with his medical condition" thereby endangering the Plaintiff's health and safety in violation of the Ninth Amendment. (Doc. 12, pp. 8-10).

The Ninth Amendment states that "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  U.S. Const. amend. IX.  This amendment has been interpreted to be a rule of construction applied to other Constitutional provisions, so while this amendment may have created the right to medical treatment and humane confinement conditions, these actionable rights shall still proceed under the Eighth Amendment.

According to the Middle District of Pennsylvania, the Ninth Amendment is not a a proper basis to raise a constitutional claim under 42 U.S.C. § 1983 as this amendmnet does not by itself confer substantive rights for purposes of 42 U.S.C. § 1983. *Clayworth v. Luzerne County*, 2011 U.S. Dist. LEXIS 139806, *11-12 (M.D. Pa. Dec. 6, 2011)(citing *Soder v. Chenot*, 2007 U.S. Dist. LEXIS 93657); *see also Perry v. Lackawanna County Children and Youth Services*, 345 Fed.Appx. 723, 726 (3d Cir. 2009) ("the Ninth Amendment, taken alone, does not independently provide a source of individual constitutional rights.").

Therefore, we will recommend that Plaintiff's Ninth Amendment claim against all Defendants be dismissed with prejudice. We find futility in allowing Plaintiff to amend his Ninth Amendment claim. *See Alston, supra*.

9. *Fourteenth Amendment Claim*

Plaintiff claims that his Fourteenth Amendment rights were violated for the following reasons: (1) Defendants allegedly knew of but failed to remedy the leaking roof and poor ventilation system which led to the alleged slip and fall in violation of the Fourteenth Amendment; (2) Defendants knew of but acted with deliberate indifference to Plaintiff's medical needs resulting from the alleged slip and fall in violation of the Fourteenth Amendment; (3) Defendants have implemented and/or failed to adopt policies, practices and procedures which Defendants "knew or reasonably should have known, would be ineffective in delivering medical treatment" thereby endangering the Plaintiff in violation of the Fourteenth Amendment; and (4) Defendants failed to instruct, supervise or train their employees and agents as to assure "the delivery of adequate medical care to Plaintiff and/ or confinement conditions

34

consistent with his medical condition" thereby endangering the Plaintiff's health and safety in violation of the Fourteenth Amendment.  (Doc. 12, pp. 8-10).

Plaintiff appears to assert his Fourteenth Amendment claim under the Equal Protection Clause and the Due Process Clause.  However, Plaintiff does not allege any other facts or Fourteenth Amendment elements to support his Fourteenth Amendment claim, but rather lumps this claim under the facts surrounding his Eighth Amendment medical care and confinement condition claims.  Plaintiff has failed to allege that he is a member of a suspected class and has failed to allege that the distinction, if any, between his medical treatment and other inmates' medical treatment was not reasonably related to a legitimate penological interest. *See Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 423 (3d Cir. 2000).

Furthermore, Plaintiff's Fourteenth Amendment due process claim is identical and already covered under his Eighth Amendment claims. According to the Third Circuit, when a due process claim is identical to an Eighth Amendment claim, a Plaintiff must bring the claim pursuant to the more explicit constitutional amendment.  *Ordonez v. Yost*, 289 Fed.Appx 553, 555 (3d Cir. 2008) *citing Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

Therefore, because Plaintiff's Fourteenth Amendment claim is already covered by Plaintiff's Eighth Amendment claims, because the Eighth Amendment is the more explicit constitutional amendment as it directly deals with confinement conditions and medical care,  and because Plaintiff does not allege any other facts or elements to support Fourteenth Amendment violation, we will recommend that Plaintiff's Fourteenth Amendment  claim be dismissed with

prejudice.   We find futility in allowing Plaintiff to amend his  Fourteenth Amendment claim. *See Alston, supra*.

9.   *Intentional Infliction of Emotional Distress Claim and State Tort Claim*

In Counts II and III of his Amended Complaint (Doc. 12, pp. 11-12), Plaintiff raises a state law Intention Infliction of Emotional Distress ("IIED") claim and a state tort claim based on the above discussed alleged facts contained in his Amended Complaint.  Plaintiff avers that his stated allegations "constitute[] a state tort for the Defendants['] failure to provide adequate medical care and/or confinement conditions consistent with Plaintiff 's medical condition... ."[7] (Doc. 12, p. 11).

The Supreme Court has held that the duty imposed by tort law is not automatically transmuted into a duty protected by the Constitution.  *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

The Supreme Court stated:

> Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.  Remedy for the latter type of injury must be sought in

---

[7]Plaintiff alleges that his state law tort claims are also brought under the Pennsylvania Constitution. (Doc. 12, p. 11). Insofar as Plaintiff is attempting to raise claims under the Pennsylvania Constitution for damages, we recommend that they be dismissed with prejudice. *See Bowers v. City of Phila*., 2008 WL 5210256, *8 (E. D. Pa.); *Moeller v. Bradford Co.*, 444 F. Supp. 2d 316, 327 and note 13 (M.D. Pa.)("Pennsylvania has no statutory equivalent to 42 U.S.C. § 1983, which  provides a private right of action for a federal constitutional violation.")(citations omitted).

> state court under traditional tort-law principles.  Just as medical
> malpractice does not become a constitutional violation merely
> because the victim is a prisoner, false imprisonment does not
> become a violation of the Fourteenth Amendment merely because
> the defendant is a state official.

*Estelle*, 429 U.S. at 106. (citations omitted).

Moreover, to the extent Plaintiff is deemed as raising a state law professional medical malpractice action against Defendants Dr. John Doe and Nurse Jane Doe for alleged failure to provide him with proper medical treatment after his fall on the DCP gym floor, Plaintiff was required to file a Certificate of Merit ("COM") under  Pennsylvania law pursuant to Pa.R.C.P. 1042.3(a)(1).  A COM is required for a Pennsylvania professional negligence claim raised in a malpractice action.  *See Santee v. U.S.*, Civil Action No. 3:CV-07-2207, September 30, 2008 Memorandum and Order (M.D. Pa.), 2008 WL 4426060 (M.D. Pa.).  "The COM requirement is set forth in a procedural rule, but federal courts exercising diversity and supplemental jurisdiction have considered it substantive law that must be applied to claims under Pennsylvania law presented in federal court."  *Booker v. U.S.*, 2009 WL 90129, *3 (citations omitted).  The Third Circuit affirmed a case in the Middle District of Pennsylvania in which the District Court found that PA Rule 1042.3 is a rule of substantive state law and that Plaintiffs in federal court must comply with this rule.  *See Perez v. Griffin*, 2008 WL 2383072 (M.D. Pa.), aff'd. 2008 WL 5351829 (3d Cir. 12-23-08); *Hodge v U.S. DOJ,* 372 Fed. Appx. 264, 267 (3d Cir. 2010) (A COM is required to state a medical negligence claim in federal court).

Plaintiff did not file a COM in this case.   Thus, we also find futility in allowing Plaintiff to amend any professional medical malpractice claims against Defendants Dr. John Doe and Nurse Jane Doe due to his failure to file a COM.

Additionally, under Pennsylvania law, to state an IIED claim, Plaintiff must allege extreme and outrageous conduct which intentionally or recklessly causes him severe emotional distress. *See Killen v. Northwestern Human Services, Inc.*, 2007 WL 2684541, *9 (E.D. Pa.)(citations omitted); *Levingston v. Borough of Edgewood*, 2008 WL 5101478, *6 (E. D. Pa. 11-26-08)(citations omitted).   Pennsylvania law requires "'some type of physical harm due to the Defendant's outrageous conduct' to satisfy the severe  emotional distress element." *Id.*(citations omitted).    Under Pennsylvania law, to state an IIED claim "Defendants' conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Hines v. Proper*, 442 F. Supp. 2d 216, 224 (M.D. Pa. 2006) (citing Restatement Second of Torts §46, comment (d)(1965)).   "In addition, Pennsylvania requires that competent medical evidence support a claim of alleged intentional infliction of emotional distress." *Id*. (citation omitted); *see also Paith v. County of Washington*, 394 Fed.Appx. 858, 861 (3d Cir. Sept. 20, 2010). "Finally, Pennsylvania law requires some type of physical harm due to the Defendant's outrageous conduct to satisfy the severe emotional distress element."  *DiLoreto v. Costigan*, 600 F.Supp.2d 671, 691 (E.D. Pa. 2009) (citations omitted).

Based on the allegations in Plaintiff 's Amended Complaint detailed above, we do not find that Plaintiff has stated a cognizable IIED claim against Defendants since he fails to  allege

extreme and outrageous conduct by Defendants which intentionally or recklessly causes him severe emotional distress.   The alleged failure to Defendants to fix the leaking gym roof did not constitute extreme and outrageous conduct which intentionally or recklessly caused Plaintiff severe emotional distress.  Also, as discussed, Plaintiff repeatedly received medical case by the DCP medical staff after his fall and he mostly disagreed with the care he received.

In accordance with the above, we will recommend that Plaintiff's Intentional Infliction of Emotion Distress and state tort negligence claim be dismissed with prejudice, since we find that leave to amend once again would be futile.[8]

## V.  RECOMMENDATION.

Based on the foregoing, it is respectfully recommended that Plaintiff Cunningham's claims for monetary damages against Defendants in their official capacities be dismissed with prejudice.  It is also recommended that Plaintiff's request for an injunction and his request for declaratory relief (Doc. 12, p. 12) be dismissed from this case with prejudice.   It is recommend that Defendant DCP Medical Department be dismissed with prejudice. Additionally, it is recommended that Plaintiff's Intentional Infliction of Emotional Distress and state tort claims be dismissed with prejudice. Further, it is recommended that Plaintiff's constitutional claims raised

---

[8]We also note that Defendants, state actors, may be entitled to sovereign immunity with respect to Plaintiff 's IIED claim and state law tort claims.  *See* 1 Pa.C.S.A. §2310; 42 Pa.C.S.A. §8522.   Plaintiff 's state law claims against Defendants would be barred unless Defendants were acting outside the scope of their employment during the relevant times of this case. *See Viera v. Wenerowicz*, 2011 WL 3584769, *5-*6 (M.D. Pa. Aug. 15, 2011).

in his Amended Complaint **(Doc. 12)** against all DCP Defendants be dismissed without prejudice for failure to exhaust his administrative remedies available at DCP.

Alternatively, if the Court does not  dismiss without prejudice Plaintiff's constitutional claims raised in his Amended Complaint **(Doc. 12)** against all DCP Defendants for failure to exhaust his administrative remedies available at DCP, the following recommendations are made.  It is recommended that Plaintiff's Fifth, Ninth and Fourteenth Amendment claims be dismissed with prejudice.  It is recommended that Plaintiff 's Eight Amendment conditions of confinement claim against Defendants Warden John Doe, Lieutenant John Doe, Officer Mike, Officer Bareck and Officer Hoss be dismissed with prejudice.  It is recommended that Plaintiff's Eighth Amendment claims for denial of proper medical care against Defendants Warden John Doe, Lieutenant John Doe, Officer Mike, Officer Bareck and Officer Hoss be dismissed with prejudice.   It is recommended that Plaintiff's Amended Complaint as against  Defendants Warden John Doe, Lieutenant John Doe, Officer Mike, Officer Bareck and Officer Hoss be dismissed entirely with prejudice.  It is recommended that Plaintiff's Eighth Amendment denial of medical care claim be allowed to proceed as against only Defendants Dr. John Doe and Nurse Jane Doe.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: August 13, 2012**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRIAN M. CUNNINGHAM, SR.,** | : | **CIVIL ACTION NO. 3:12-CV-0934** |
| | : | |
| **Plaintiff** | : | **(Judge Caputo)** |
| | : | |
| **v.** | : | **(Magistrate Judge Blewitt)** |
| | : | |
| **JOHN DOE, *et al.*,** | : | |
| | : | |
| **Defendants** | : | |

## <u>NOTICE</u>

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing

Report and Recommendation dated August 13,  2012.

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


      Failure to file timely Objections may constitute a waiver of any appellate rights.


_____

s/ Thomas M. Blewitt
THOMAS M. BLEWITT
United States Magistrate Judge


Dated: August 13,  2012